UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIAH LOPEZ,

                        Plaintiff,

             -against-

U.S. DEPARTMENT OF THE INTERIOR;
NATIONAL PARK SERVICE; HUDSON
RIVER PARK TRUST; NEW YORK STATE
EXECUTIVE CHAMBER; NEW YORK
STATE DEPARTMENT OF PARKS,
RECREATION AND HISTORIC
PRESERVATION,

                        Defendants.

22-CV-4744 (LTS)

ORDER TO SHOW CAUSE

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Mariah Lopez, who is appearing *pro se*, currently resides in Schenectady, New York. Plaintiff brings this action challenging, on constitutional and other grounds, an ongoing construction project in Hudson River Park in Manhattan. Plaintiff filed a motion seeking preliminary injunctive relief in the form of an order halting work at the site. By order dated July 5, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, without prepayment of fees. For the reasons set forth below, the Court denies without prejudice the motion for preliminary injunctive relief, and directs Plaintiff to show cause why this Court should not abstain from exercising jurisdiction of this action.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see* Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a

complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While

the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se*

pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the

"strongest [claims] that they *suggest*," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75

(2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

Plaintiff filed this complaint against the U.S. Department of the Interior (USDOI), the

National Park Service (NPS), the Hudson River Park Trust (HRPT), the New York State

Executive Chamber (NYSEC), and the New York State Department of Parks, Recreation and

Historic Preservation (NYSDOP), asserting claims under the First, Fourth, and Fourteenth

Amendments to the United States Constitution; the National Historic Preservation Act, 54 U.S.C.

§§ 306108, 306113; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17; Title

I and II of the Americans with Disabilities Act; 42 U.S.C. §§ 12101 *et seq.*; the U.S. Department

of Transportation Act, Section 4(f), 49 U.S.C. § 303; the New York State Constitution; the New

York State Historic Preservation Act; and the New York City and New York State Human Rights

Laws. (ECF 2 at 1-2, 25.)[1] The following facts are drawn from the complaint and more than 650

pages of attachments to the complaint and motion. (ECF 2-5.)

Plaintiff, a transgender activist, challenges the construction of a beach and soccer fields in

Hudson River Park between Christopher Street and the Gansvoort Peninsula, because the $75

million project fails to honor the historical significance of that portion of the park to the

transgender community. Plaintiff asserts that the area:

> **meets and satisfies** the statutory definition and requirements to be classified as a
> Historic Resource under the National Historic Preservation Act; **being the**

---

[1] Citations are to the pagination of the Court's ECF system.

> **birthplace and incubator of a disproportionate amount of (Black Latino Transgender and Gender Non Conforming; Gay and Lesbian) American heritage, history and culture when one considers the areas [sic] relatively small size**.

(*Id.* at 2) (emphasis included.)

The area was "referred and nominated" for historic preservation in 2014, but ultimately was not afforded that protection. The New York State Historic Preservation Office conducted a study that was "flawed, deficient, inadequate; intentionally misleading," and also "racist, sexist, classist, and transphobic," a "rubber-stamp approval" process favoring "wealthy white developers and interests." (*Id.* at 3-4.) According to Plaintiff, the new "artificial landscape" will "threaten," "degrade," and "irreparably harm" the "local culture and history," and impose a "new socio-ethnic dynamic in the area," and replace "TLGBQ+ communities" with "white, cis, hetero sunbathers."(*Id.*) She further claims that "zero consideration was given" to how the project would "intersect with Black, Brown, and [trans and gender nonconforming] history and culture" and how the plan would "adversely impact the historic and traditional use of the park by these communities, and or how it might threaten Historic Resources associated with the same." (*Id.* at 6-9.) Since 2017, HRPT "intentionally downplayed, threatened, destroyed, hid or erased valuable historic resources" within the park associated with the transgender community, and Defendants failed to "conduct[] adequate and unbiased public proceedings" to get input from minority groups, including those who are Black, Latino, gender nonconforming, homeless, and poor. (*Id.* at 15-16.)

Plaintiff provides a great deal of material documenting her civil rights work, the history of the transgender rights movement and the ballroom scene, and the significance of this portion of the park to the transgender community. (ECF 4.) Plaintiff is the adopted daughter of Sylvia Rivera, a transgender activist, and she made a documentary about another transgender activist,

3

"civil rights icon and American hero" Marsha P. Johnson. (*Id.* at 22.) Johnson died in the park in

1992, and Rivera's ashes were scattered there in 2002, and Plaintiff alleges that for these reasons

alone, the area should qualify for historic preservation. (*Id.* at 23.)

In 2020, then-Governor Cuomo announced that a park in Brooklyn would be renamed to

honor Johnson. (*Id.* at 8-13.) Plaintiff publicly challenged the proposal because Johnson had no

connection to Brooklyn. (*Id.* at 13-14.) Cuomo allegedly retaliated against Plaintiff for her

outspokenness by failing to "follow through" on a 2019 promise to give her a paid position,

which would have helped her transition from "SSI to the workforce." Plaintiff identifies herself

as disabled, but does not describe the nature of her disability or how her disability played a role

in what transpired. (*Id.* at 14.) Plaintiff alleges that if the project continues, she will suffer

irreparable harm in the form of "psychic pain and a sense of personal loss, including part of her

own identity, which may never be restored." (*Id.* at 22.) In addition to injunctive relief, Plaintiff

seeks money damages. (*Id.* at 24.)

Attachments to the complaint show that on or about February 3, 2022, Plaintiff filed an

action under Article 78 of the New York Civil Practice Law and Rules, in New York State

Supreme Court, Albany County, challenging the same project that is at issue in this case. *Lopez v.

Hochul*, Ind. No. 781/22 (Sup Ct., Albany Cnty.). (ECF 4, ECF 5 at 29.) Named as Defendants in

that case are New York State Governor Kathy H. Hochul; NYSEC, NYSDOP, NOSDOP

Commissioner Erik Kullesseid; and HRPT. The state court issued a temporary restraining order,

but vacated it on or about March 21, 2022, "to the extent" that "site preparation work" could

proceed.[2] (ECF 5-2 at 12-14.) Plaintiff submitted documents in the state court seeking to reargue

---

[2] Plaintiff previously filed a complaint and motion for injunctive relief in this Court
arising out of the same events, which was dismissed without prejudice because she filed it on

the March 21, 2022; Plaintiff alleges that there were "inadequacies and revisionist history" contained in Defendants' submissions. (ECF 2 at 8.) The motion was returnable on April 22, 2022, (ECF 5-2 at 15), but it is not clear whether the state court has issued a decision. Plaintiff acknowledges that the state court matter is "still pending," but asserts that there is no "*res judicata*" issue, because "there has been zero finding of fact" in the state court proceeding, and because the state court has not "reached a decision [on the] merits relating to" her claims. (ECF 2 at 9.)

## DISCUSSION

### A.    Abstention

Because the claims that Plaintiff raises in this complaint have been raised and are pending in state court, *see Lopez v. Hochul*, Ind. No. 781/22 (Sup Ct., Albany Cnty.), this Court must consider whether it should abstain from exercising jurisdiction of this action.

Under the *Colorado River* doctrine, a federal court may abstain from exercising jurisdiction in the interest of wise judicial administration and conservation of resources, but only in certain circumstances. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818-819 (1976) (explaining that none of the factors are alone "determinative . . . [and that] a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required"); *see also Am. Disposal Serv., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir. 1988) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983)).

---

behalf of a nonprofit organization, Strategic Transgender Alliance For Radical Reform (STARR). *Starr v. Hudson River Park Trust*, ECF 1:21-CV-5721, 11 (LTS) (S.D.N.Y. July 12, 2021).

In evaluating whether abstention is appropriate, federal district courts consider six factors:

> (1) whether the controversy involves a res [property] over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed . . . and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Community Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001).

After applying these factors, the Court is inclined to abstain from exercising jurisdiction over this action. There is arguably property at issue, of which the state court has assumed jurisdiction; the federal forum is not less inconvenient than the state forum in which the parties are already litigating the matter; staying or dismissing the action will avoid piecemeal litigation; the state-court action was filed first and has advanced well beyond the stage of litigation in this Court; federal law does not necessarily provide the rule of decision; and finally, state procedures are adequate to protect Plaintiff's federal rights.

The Court therefore directs Plaintiff, within 30 days of the date of this order, to show cause why the Court should not abstain from exercising jurisdiction of this action. In so doing, she should explain why any federal rights cannot be protected in the state court action, and why she brings this action here given that she already is litigating the matter in state court.

**B.    Motion for injunctive relief**

Plaintiff has filed a motion requesting "immediate Judicial/Injunctive relief," which the Court construes as a request for preliminary injunctive relief. To obtain such relief, Plaintiff must show: (1) that she is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of her case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in her favor. *See UBS Fin.*

*Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F. 3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2000). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

Plaintiff has not shown that she is entitled to the extraordinary and drastic remedy of injunctive relief from this Court. Plaintiff already obtained injunctive relief from the state court, which appears to have been only partially vacated. In light of the pending state court action, the Court is inclined to abstain from exercising jurisdiction of this matter. Plaintiff has thus failed to show (a) likelihood of success on the merits of her case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in her favor. For these reasons, Plaintiff's motion for preliminary injunctive relief (ECF 3, 4) is denied without prejudice.

## ORDER TO SHOW CAUSE

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). In light of Plaintiff's *pro se* status, and in an abundance of caution, the Court grants Plaintiff 30 days' leave to show cause why the Court should not abstain from exercising jurisdiction of this action.

**CONCLUSION**

The motion for preliminary injunctive relief is denied without prejudice, and the Clerk of

Court is directed to terminate the motion. (ECF 3-4.) Plaintiff is directed to file a declaration

within 30 days of the date of this order showing cause why the Court should not abstain from

exercising jurisdiction of this action. A declaration form is attached to this order.

Plaintiff consents to electronic service. (ECF 7.)

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would

not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf.*

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates

good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   July 6, 2022
         New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

8